**HARMON, Appellant,**

v.

**PHILIP MORRIS, INC. et al., Appellees.**

[Cite as *Harmon v. Philip Morris, Inc.* (1997), 120 Ohio App.3d 187.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71605.

Decided Sept. 8, 1997.

*Lancione & Simon, Ellen S. Simon* and *Cathleen M. Bolek,* for appellant.

*Arter & Hadden, John B. Lewis* and *Thomas R. Simmons,* for appellees.

O'DONNELL, Judge.

Carl Harmon appeals from an order of the common pleas court granting the motion of Philip Morris, Inc. and four of its employees to compel arbitration on his claims for wrongful discharge from employment, breach of contract, defamation and racial discrimination.

The record in the case reveals that in December 1994, Philip Morris distributed to its employees copies of an employee handbook and a brochure describing a Sales Dispute Resolution Program, which included pamphlets explaining the dispute resolution and benefits programs. The Dispute Resolution Program, by its own terms, contractually modified the at-will employment relationship between the company and its field sales employees and reserved to Philip Morris the right to amend or terminate the program at any time. It further provided exclusive remedies for employees to resolve employment termination disputes with Philip Morris by using a company ombudsman or mediation, or by seeking arbitration through the American Arbitration Association, and it also specified that if an employee filed a case in a court of law, Philip Morris would move to dismiss that case and seek arbitration. Significantly, Philip Morris told its field sales employees that they would be required to comply with the terms of the Dispute Resolution Program or their employment would be terminated.

Harmon, who had been employed by Philip Morris for about nine years, signed an "Acknowledgment," which stated that he received and understood the foregoing documents. However, on March 10, 1995, Philip Morris notified him that his employment was being terminated. About a year later, on March 11, 1996, Harmon filed a complaint in the common pleas court against Philip Morris and several of its employees, alleging wrongful termination from employment, racial discrimination, defamation and breach of contract. In accordance with the terms of the Dispute Resolution Program, the appellees moved to compel arbitration, which the court granted, and Harmon now appeals that decision, raising one assignment of error for our review.

The sole assignment of error states:

"The trial court erred in granting defendants-appellees' motion to stay proceedings and to compel arbitration."

Harmon's contention is that the trial court erred when it ordered arbitration, asserting that he never agreed to arbitrate his claims arising out of his employment, and urging that the signed acknowledgment does not constitute an enforceable contract.

Appellees urge that the court properly ordered arbitration, contending that, by signing the acknowledgment, Harmon specifically agreed to submit employment termination claims to arbitration.

The issue then presented for our review in this case is whether the trial court erred in enforcing the terms of the Dispute Resolution Program by compelling Harmon to arbitrate his claims, thereby denying him the opportunity to present them to a jury.

We begin our analysis by reviewing the Federal Arbitration Act, Section 1 *et seq.*, Title 9, U.S. Code, which provides:

"A written provision in any *** contract evidencing a transaction involving commerce *** or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract *** shall be valid, irrevocable, and enforceable ***." Section 2, Title 9, U.S. Code.

We are further aware that the court in *AT & T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, stated at 648, 106 S.Ct. at 1418, 89 L.Ed.2d at 655:

"[A]rbitration is a *matter of contract* and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit ***." (Emphasis added).

Next we have reviewed the Restatement of the Law 2d, Contracts (1981), Section 17, which provides as follows:

"(1) *** the formation of a contract requires a bargain in which there is a *manifestation of mutual assent to the exchange and a consideration.*" (Emphasis added.)

Section 22 provides:

"(1) The manifestation of mutual assent to an exchange ordinarily takes the form of an *offer* or proposal by one party followed by an *acceptance* by the other party or parties." (Emphasis added.)

Section 71 provides:

"(1) To constitute consideration, a performance or a return promise *must be bargained for.*

"(2) A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise.

"(3) The performance may consist of

"(a) an act other than a promise, or

"(b) a forbearance, or

"(c) the creation, modification, or destruction of a legal relation." (Emphasis added.)

In *Brads v. First Baptist Church* (1993), 89 Ohio App.3d 328, 624 N.E.2d 737, the court stated:

"Consideration is, of course, an element necessary for a binding contract, and a complete lack of any consideration is a valid defense to a breach of contract action. Consideration may consist of either a *detriment to the promisee or a benefit to the promisor.* A benefit may consist of some right, interest or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promisee." (Emphasis added and citations omitted.) *Id.* at 336, 624 N.E.2d at 743.

The facts here demonstrate that Philip Morris provided the program brochures along with an "Acknowledgment" to Harmon with instructions that he sign it and return it to his immediate supervisor. Further, in a pleading submitted to the trial court, Philip Morris admitted, "Harmon was given the option to agree to the Dispute Resolution Program, including the arbitration of termination claims and its other benefits *** or to reject the program and work elsewhere."

We recognize that generally, an acknowledgment in law is in the nature of an admission or a receipt, as in this case, where Harmon admitted or acknowledged that he received the program pamphlets. See Black's Law Dictionary (6

Ed.1990) 23. It is not in the nature of an acceptance of an offer to create a contract.

We further recognize that rather than engage in a bargained-for exchange with its at-will employees, Philip Morris modified the terms of its relationship with them, as evidenced by its own description of the Dispute Resolution Program, offered them no consideration for this modification, but instead demanded an acknowledgment from them by advising that failure to sign would result in termination of employment. It now equates that acknowledgment with an acceptance of its modification. After examining the facts of this case and the law, we conclude that the signed acknowledgment by Harmon does not constitute acceptance of an offer to modify the terms of his employment. He merely acknowledged his receipt and understanding of the items presented to him. He never expressed assent to those terms.

██ Further, the terms of this program require employees to arbitrate their claims against Philip Morris but do not similarly require Philip Morris to arbitrate its claims against them, and, since Philip Morris reserves the right to amend or terminate this program at any time, it has neither offered a benefit to its employees nor incurred any detriment by modifying the terms of the employment relationship. Thus, no consideration flowed from the employer to the employees to compensate them for relinquishing their individual and collective rights to present their claims to a jury in a court of law because they remained at-will employees following implementation of the program, subject to termination but without the right to seek redress from a jury.

Since Harmon only acknowledged, but never accepted, the offer of Philip Morris to modify the employment relationship and because Philip Morris offered no consideration to Harmon to accept its offer, no meeting of the minds occurred between the parties and they did not form a contract. Since a party cannot be required to submit a dispute to arbitration unless it has agreed to do so, see *AT & T Technologies*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648, the trial court erred by ordering arbitration in this case. Accordingly, this assignment of error is well taken, and the judgment of the court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PATRICIA ANN BLACKMON, P.J., and MATIA, J., concur.