Debra M. **TRUMBULL**, et al., Plaintiff,

v.

**CENTURY MARKETING CORPORATION,**
Defendant.

No. 3:97CV7672.

United States District Court,
N.D. Ohio,
Western Division.

July 7, 1998.

Patricia Horner, Lisa M. Snyder, Toledo, OH, for Plaintiffs.

Renisa A. Dorner, Patricia A. Wise, Wise & Dorner, Toledo, OH, for Defendant.

## Order

CARR, District Judge.

This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1964, as amended. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending is defendant's motion and application to stay proceedings pending arbitration. (Doc. 18). Defendant claims that arbitration of plaintiff's claim is required by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (FAA), because of an arbitration clause contained in the employee handbook. For the following reasons, defendant's motion shall be denied.

## Facts

Plaintiff Debra Trumbull was employed by Century Marketing Corp. (Century) for about ten years. Her employment was terminated by Century in August of 1997. Sometime after plaintiff began her employment and before March 1, 1996, she was given an employee handbook to read and sign. The court has no record of the circumstances under which she was asked to sign the handbook. Also, the court has no record indicating how the handbook may vary or correspond with any handbook or original employment contract.

During her employment with Century, plaintiff alleged several incidents of sexual harassment by her supervisor, and complained of a hostile working environment. Trumbull claims that Century did not respond adequately to her complaints, and that she was ultimately discharged by Century in retaliation for her sexual harassment claims. The merits of these claims are not relevant at this time.

The employee handbook states that "any and all disputes arising out of employment with the Company will be resolved through arbitration". (Def. Ex. A). Defendant argues that this arbitration clause is a valid, binding agreement barring the plaintiff from bringing any claim in this court until the matter is arbitrated. Plaintiff contends that her Title VII claim is not subject to the arbitration clause and that defendant's motion to stay proceedings should be denied.

This order is concerned solely with whether the arbitration clause is a valid, binding agreement to arbitrate disputes between the parties. While the ultimate question is whether there was a valid waiver by Trumbull of her right to take her Title VII claim to a judicial forum, there are several sub-issues raised by the parties.

## Discussion

### I. Arbitrability of Title VII Claims

Plaintiff argues that Title VII claims are not a proper subject of arbitration. Although cases cited by the plaintiff establish that arbitration may not be a final disposition of Title VII claims, they do not support the conclusion that arbitration is an improper

forum for an attempted resolution of claims. For example, in *Alexander v. Gardner–Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Court held that a plaintiff was not precluded from bringing a claim to court after submitting the claim to arbitration. The Court concluded that because the individual rights protected by Title VII are so important, Title VII claims that go to arbitration are subject to judicial review. The court did not hold, however, that Title VII claims cannot initially be arbitrated.

More support for the finding that Title VII claims are the proper subject of arbitration is found in the Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer*, the Plaintiff sued his former employer alleging that his termination violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* The plaintiff had been required, as a condition of his employment, to register with the New York Stock Exchange. The registration application provided that "any controversy between a registered representative and any member or member organization arising out of employment or termination of employment of such registered representative" shall be subjected to arbitration. 500 U.S. at 22. The Court held that this agreement was enforceable as to the plaintiff's age discrimination claim.

In *Gilmer* the Court held that statutory claims generally are a proper subject of arbitration. In noting, however, that some statutory claims may not properly be submitted to arbitration, the Court referred to an earlier decision in which it stated that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." 500 U.S. at 26 (*citing Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)).

## II. Arbitration Agreements in Employment Contracts

One question specifically reserved by the Court in *Gilmer* is whether arbitration agreements in employment contracts (as op-

posed to those in securities registration applications) are enforceable. *Gilmer*, 500 U.S. at 24 n. 2. Plaintiff argues that the FAA's § 1 exclusion of "contracts of employment of seamen, railroad employees or any other class of workers engaged in foreign or interstate commerce" excepts all employment contracts from the Act. Under current Sixth Circuit law this argument is without merit.

Plaintiff is correct that the Sixth Circuit held in dicta that the FAA excludes all employment contracts in *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305 (6th Cir.1991). This holding was overruled, however, by *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir.1995). In *Asplundh*, the court concluded that "the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." 71 F.3d at 600–01. Plaintiff makes no claim that her employment involved such a relationship to interstate commerce.

Thus, while I have many reservations, as set forth below, about permitting waiver of the right to a jury trial in the employment context, I am bound by the Sixth Circuit to enforce such waivers when they are valid.

■ Before discussing the validity of the waiver in this case, I address another issue raised by the parties: whether the employee handbook constitutes an employment contract. Ohio law is split on the issue of whether employee handbooks can be construed as binding contracts. *Compare Kramer v. Medical Graphics Corp.*, 710 F.Supp. 1144 (N.D.Ohio 1989) (holding employer not legally bound to terms of an employee handbook) *with Pond v. Devon Hotels, Ltd.*, 55 Ohio App.3d 268, 563 N.E.2d 738 (1988) (holding that employee handbooks may, in combination with surrounding circumstances, create limitations on an employer's right to discharge an employee). I believe that the handbook here is not an enforceable contract because both parties are not bound to its terms.

Despite plaintiff's submission that the handbook was a binding contract and admission that she agreed to submit all contractual disputes to arbitration, there is no binding contract because of the unilateral nature of the handbook's terms. The introduction to the handbook states "the company may modify, augment, delete, or revoke any and all policies, procedures, practices, and statements contained in this Handbook at any time, without notice." (Def. Ex. A, at 3).

█ To give effect to this language and hold that a valid contract exists would be to create a contract where only one party is bound. The plaintiff would be bound by all the terms of the handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced. *Thomas G. Snavely Co. v. Brown Construction Co.*, 16 Ohio Misc. 50, 55–56, 239 N.E.2d 759, 762 (1968). Plaintiff's signing the "acknowledgment of receipt of handbook" (Def. Ex. B) does nothing to make the handbook an enforceable contract.

Additionally, there is no evidence of consideration for the alleged arbitration agreement. The handbook defendant produced as Exhibit "A" was not signed by Trumbull as a condition of employment. Rather, it was signed sometime after her employment with Century began, and did not take effect until March 1, 1996.[1] (Def. Ex. A). There was no consideration offered by Century at this point in exchange for plaintiff's acknowledgment of the handbook, thus the arbitration clause cannot be enforced under basic principles of contract law.

The arbitration clause is not enforceable because it is merely a term of an invalid contract. But, even if Ohio law were to be construed against my finding and the handbook held to be a valid contract, the arbitration clause is still unenforceable because

there has been no valid waiver by Trumbull of her right to take a Title VII claim to a judicial forum.

## III. Waiver of Right to Judicial Forum

I have several reservations about finding a waiver of legal rights in the employer-employee context. This is so because employment contracts rarely result from bargaining between the parties. Rather, an employee is given a contract to sign on a take-it-or-leave-it basis. If she leaves it, she loses the opportunity for employment. In this setting, it can hardly be said that the terms of an employment contract represent mutual assent by the parties.

Viewing employment contracts from this perspective, it is one thing to understand that an employer can legally impose certain work requirements upon an employee. It is quite another to allow for the waiver of certain legal rights within the employment contract. Nonetheless, the Supreme Court and the Sixth Circuit have clearly held that an individual's right to pursue a Title VII employment discrimination claim in a federal court can be waived in an employment contract. Such must, however, still be valid; to be valid, it must at least be knowing. *See K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir.1985).

Like the present action, *K.M.C.* involved an alleged waiver of the Seventh Amendment's guaranty of the right to a jury trial in a civil action.[2] The court in *K.M.C.* first held that the question of whether the plaintiff had waived his right to a jury trial was one of federal law. The court relied on its earlier decision in *Sambo's Restaurants, Inc. v. City of Ann Arbor*, 663 F.2d 686 (6th Cir.1981) (dealing with the waiver of First Amendment rights). In *Sambo's*, the court concluded that the question of whether the plaintiff had waived his First Amendment rights in a written agreement was not governed by the

---

1. There is no evidence of an arbitration agreement existing before March 1, 1996, and there is no language in the handbook to suggest its provisions are retroactive. Some of the alleged conduct plaintiff complains of occurred in 1995. For this reason defendant's motion to stay proceedings pending arbitration for any claims arising before March 1, 1996 must be dismissed

regardless of the fate of the motion as to claims arising after March 1, 1996.

2. The plaintiff in the present action not only has a right to a jury trial protected by the Seventh Amendment, but also has a statutory right to elect such proceedings under 42 U.S.C. § 1981a(c).

Michigan contract law standard of waiver. Rather, "the question of waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." *Sambo's,* 663 F.2d at 690 (*quoting Brookhart v. Janis,* 384 U.S. 1, 4, 86 S.Ct. 1245, 1246–47, 16 L.Ed.2d 314 (1966)).

The court in *K.M.C.* then stated that a valid waiver of the right to jury trial must be knowing and voluntary. The court found support for this conclusion in *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), in which the Supreme Court discussed the waiver of basic due process rights. In *Fuentes,* the Court discussed the fact that although due process rights may be waived in a contractual agreement, it is important that both parties be aware of the significance of the waiver. "A waiver of constitutional rights in any context must, at the very least, be clear." 407 U.S. at 95–96.

█ The alleged waiver by plaintiff of her right to a jury trial in this case was not knowing or clear. The language of the arbitration clause says nothing about arbitration of statutory claims as opposed to contractual disputes, or about the significance of the right to a judicial forum. For a waiver to be valid, such language must be present in the agreement.

Support for this conclusion is found in the Ninth Circuit's decision in *Nelson v. Cyprus Bagdad Copper Corp.,* 119 F.3d 756 (9th Cir.1997). In *Nelson,* the Ninth Circuit held that claims under the Americans with Disabilities Act may be subject to compulsory arbitration only when the plaintiff knowingly and voluntarily waives his right to a judicial forum. The alleged waiver in *Nelson,* like that, here, was contained in an employee handbook. The plaintiff in *Nelson,* like the plaintiff here, acknowledged receiving the handbook.

In deciding that the acknowledgment did not constitute a valid waiver, the court in

*Nelson* noted that nothing in the acknowledgment referred to the arbitration agreement or stated that accepting the handbook constituted a waiver of the right to a judicial forum for resolution of discrimination claims. Furthermore, under the express terms of the acknowledgment, the plaintiff had not agreed to be bound by the handbook's provisions. *Nelson,* 119 F.3d at 761. The facts of the present case are analogous to *Nelson,* and I concur in its reasoning.

Furthermore, the language of the arbitration clause cannot be combined with plaintiff's signed acknowledgment to constitute a waiver of her right to a judicial forum because of how the arbitration clause is presented. The arbitration clause and its provisions fill less than two pages of a sixty page handbook. Nothing about the text of the arbitration clause sets it apart from those provisions of the handbook which do not affect an employee's legal rights. No language suggests that the clause will effect the employee's legal rights.[3] Further, there is no reference to the clause or its significance in the acknowledgment plaintiff was asked to sign.

Accordingly, it cannot be concluded that there was a knowing waiver of the right to a judicial forum, nor can it be concluded that plaintiff, or any ordinary person, would contemplate that such an important legal right was at issue. Under these circumstances, it cannot be said that the parties agreed to submit discrimination claims to arbitration or that plaintiff knowingly waived her right to have her day in court. To conclude that there was waiver of such an important right, there must at least be evidence that the plaintiff intended such waiver.

█ Finally, for a valid waiver of the right to a jury trial under Title VII the process elected instead of judicial proceedings must allow the individual full protection of all rights given by the statute. The arbi-

---

3. *Compare Cole v. Burns Int'l Security Services,* 105 F.3d 1465 (D.C.Cir.1997). In *Cole,* the court enforced an arbitration agreement in the employment context where the "Pre–Dispute Resolution Agreement" was a separate document signed by the plaintiff. The agreement contained explicit language stating that the plaintiff agreed to

waive the right to a trial by jury, and that this agreement covered all discrimination claims brought under federal or state law. Additionally, the agreement used all capital letters to set apart a clause discussing the value of the right to a trial and a trial by jury.

tration clause cannot be enforced as a compulsory arbitration agreement because in its proposed arbitration procedures Century attempts to limit a plaintiff's remedies under Title VII. In *Mitsubishi, supra*, the Court recognized that when used as an alternative to judicial proceedings, arbitration must protect all the substantive rights of a plaintiff. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by a statute; it only submits their resolution to an arbitral, rather than a judicial, forum." 473 U.S. at 628. From this it can be concluded that when an arbitration proceeding would limit any substantive right granted by a statute, it is not a proper forum for the claim's resolution.

Under the terms of defendant's employee handbook, the "arbitrator shall not have the power to award punitive, exemplary, or consequential damages." (Def. Ex. A at 51). Under 42 U.S.C. § 1981a(b), a Title VII claimant may be entitled to punitive damages. Because the arbitration procedure proposed by the defendant would limit the remedies available to the plaintiff under Title VII, it is not an acceptable replacement for a judicial forum.

### Conclusion

For the foregoing reasons it is hereby

**ORDERED THAT** defendant's motion and application to stay proceedings pending arbitration, (Doc. 18) be, and hereby is, denied.

**So ordered.**